# Operation of the Twenty-Fifth Amendment Respecting Presidential Succession

The Twenty-Fifth Amendment to the Constitution provides the mechanism for Presidential succession by the Vice President in the event the Office of the President becomes vacant or the President becomes unable to perform the duties of his office.

Upon the death, resignation, or removal of the President, the Vice President immediately and automatically assumes the Office of President and relinquishes the office of Vice President. The taking of the oath of office is not a necessary precondition to assuming the office of the President under these circumstances, but is an obligation which should be promptly discharged.

For purposes of declarations that the President is unable to discharge the powers and duties of his office under § 4 of the Twenty-Fifth Amendment, "the principal officers of the executive departments" are the heads of the departments listed in 5 U.S.C. § 101.

The written declarations of Presidential inability triggering succession procedures under § 4 of the Twenty-Fifth Amendment need not necessarily be personally signed by the Vice President and a majority of the principal officers of the executive departments. The only requirements are that their assent to the declaration be established in a reliable fashion and that they direct that their names to be added to the document.

June 14, 1985

MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

The purpose of this memorandum is to provide you with background information on the requirements and operation of Presidential succession under the Twenty-Fifth Amendment to the Constitution. The Twenty-Fifth Amendment provides a mechanism for Presidential succession by the Vice President in the event that the office of President is vacant or the President becomes unable to perform his Presidential duties, and a mechanism for filling the office of Vice President when the Vice President dies, resigns, or is removed from office. In this memorandum, we incorporate and expand upon analysis done by this Office in April 1981, in the wake of the assassination attempt on President Reagan. *See* "Presidential Succession and Delegation in Case of Disability," 5 Op. O.L.C. 91 (1981). Although we cannot predict in advance every question that might arise in a situation that triggers the Twenty-Fifth Amendment, we outline the operation of the Amendment and discuss the major procedural issues that might arise.

## I. Summmary of Provisions

With respect to succession to the Presidency, the Twenty-Fifth Amendment is intended to govern two situations: (1) when the office of President is vacant, because of the death, resignation, or removal from office of the President; and (2) when the President becomes unable to perform his constitutional duties. In addition, the Amendment provides a means for filling the office of Vice President when that office is vacant. It does not, however, include any provision for assumption of the powers and duties of the Vice President if the Vice President becomes unable to discharge his duties, but remains in office.

### A. Sections 1 and 2

Sections 1 and 2 of the Twenty-Fifth Amendment deal with vacancies in the office of President or Vice President. Section 1 provides that the Vice President "shall become President" if the President is removed from office, dies, or resigns. U.S. Const. amend. XXV, § 1. Pursuant to § 2, the President "shall nominate a Vice President" whenever a vacancy occurs in the office of Vice President; the nominee takes office upon confirmation by a majority vote of both Houses of Congress. *Id.* § 2.

### B. Sections 3 and 4

Sections 3 and 4 provide for Presidential succession when the President remains in office, but is unable to discharge his constitutional duties. Succession may occur in two ways. First, under § 3, the President, if he is able and willing to do so, may provide for the temporary assumption of the powers and duties of his office by the Vice President by "transmit[ting] to the President pro tempore of the Senate and the Speaker of the House his written declaration that he is unable to discharge the powers or duties of the President." *Id.* § 3. When the President transmits such a declaration, the powers and duties of the President devolve upon the Vice President as Acting President until the President transmits an additional written declaration stating that he has become able to perform his responsibilities.

Second, under § 4, if the President is unable or unwilling to transmit a declaration of his inability to perform his duties, the Vice President will become Acting President if he and a majority of the "principal officers of the executive departments" transmit to the President *pro tempore* of the Senate and the Speaker of the House a written declaration that the President is unable to discharge the powers and duties of his office. *Id.* § 4. The President may subsequently transmit a declaration to the President *pro tempore* and the Speaker of the House that he is able to discharge his duties, whereupon he may resume the powers of his office, unless, within four days, the Vice President and a majority of the principal officers of the executive departments transmit an additional written declaration stating that the President is unable to discharge

his powers and duties. At that point, Congress must decide the issue within specified time limits. The Vice President would remain Acting President until the congressional vote. If, within the required time period, Congress votes by a two-thirds majority that the President is unable to discharge the powers and duties of his office, the Vice President would continue to serve as Acting President; otherwise, the President would resume the powers and duties of his office. *Id.*

## II. Procedural Requirements

We focus on the procedures that would be used under the Twenty-Fifth Amendment for assumption by the Vice President of the powers and duties of the President, either because of a vacancy in the office under § 1, or because of a Presidential disability under §§ 3 or 4.[1]

### A. *Succession by the Vice President Under § 1*

Section 1 imposes no specific procedural requirements on a Vice President who assumes the Presidency because of the death, resignation, or removal from office of the President. Under the clear and simple terms of that section, the Vice President "shall become" President upon creation of a vacancy in the office of President. The Vice President thereupon relinquishes all duties and responsibilities as Vice President, and there is a vacancy in the office of Vice President that triggers the mechanism in § 2 for nomination and confirmation of a new Vice President.

To our knowledge, all Vice Presidents who have succeeded to the Presidency, whether pursuant to Article II, § 1, cl. 6 of the Constitution or pursuant to the Twenty-Fifth Amendment, have taken the Presidential oath of office as one of their first actions, although the taking of the oath is not, strictly speaking, a prerequisite to assumption of the powers and duties of the Presidency.[2] Although Article II, § 1, cl. 8, which sets forth the Presidential oath, is not entirely clear on the effect of taking the oath, the weight of history and authority suggests that taking the oath is not a necessary step prior to the assumption of the office of President and is not an independent source of Presidential power. It is, nonetheless, an obligation imposed on the President by the Constitution, and should be one of the first acts performed by the new President. *See* R. Silva, *Presidential Succession* 37–38 (1951); E. Corwin, *The President: Office and Powers* 72 (1948); E. Corwin, *The Constitution and What It Means Today* 155–56 (14th ed. 1978).

The text of the Presidential oath is set forth in Article II, § 1, cl. 8: "I do solemnly swear (or affirm) that I will faithfully execute the Office of President

---

[1] We do not address in this memorandum the specific procedural requirements that would be imposed for nomination and confirmation of a new Vice President under § 2 of the Twenty-Fifth Amendment.

[2] With respect to succession by the Vice President, Article II, § 1, cl. 6 states: "In Cases of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Power and Duties of the said Office, the Same shall devolve on the Vice President."

of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States." Several categories of persons are empowered to administer the Presidential oath of office.[3] Such an oath may be administered by any person who is authorized to administer oaths by the laws of the locality where the oath is taken. 5 U.S.C. § 2903(c)(2). This would include, for example, justices of the peace, state judges, and other officials authorized to administer oaths under the laws of the particular state.

In addition, the head of any executive agency or military department may designate in writing any employee of that agency or department to administer oaths, including the Presidential oath. *See* 5 U.S.C. § 2903(b)(2). For this purpose, the term "executive agency" is broader than the traditional Cabinet departments and includes all the independent agencies and the quasi-governmental corporations whose stock is owned by the government. Thus, virtually any federal employee may administer the oath of office if the agency head has previously prepared the proper written designation.[4]

Finally, the Vice President may administer any oath required by the laws of the United States. 5 U.S.C. § 2903(c)(1). This authority would appear to be of little use in swearing in a new President, however, because a Vice President would, if able to act at all, be taking the oath, not giving it.

## B. Succession by the Vice President Under §§ 3 and 4

The procedure for a Presidential declaration of his own disability under § 3 is fairly straightforward: the President makes a written declaration of his disability, which is transmitted to the President *pro tempore* of the Senate and the Speaker of the House, and the Vice President thereupon becomes Acting President until the President transmits a second written declaration stating that he is once again able to discharge the powers and duties of his office. We believe that a written declaration pursuant to § 3 could be prepared by the President in anticipation of an expected temporary disability, for example, if the President were scheduled to undergo surgery that would require general anesthetic and would result in the President's being unconscious for a significant length of time.

The most difficult procedural questions are presented by the mechanism in § 4 for determining a Presidential disability when the President does not or cannot make his own declaration of disability. The first question is, who are the "principal officers of the executive departments" who must participate with the Vice President in the determination of disability?

---

[3] There is no requirement that the presidential oath be sworn on a Bible. Use of the Bible is a tradition begun by George Washington and observed by Presidents-elect since that time as a symbol of the solemn and sincere nature of the obligations they were undertaking. We do not know whether all Presidents have used the Bible when they were sworn in.

[4] The authority given to agency heads by 5 U.S.C. § 2903(b)(2) may be delegated to lower-ranking officials. In the Department of Justice, for example, general authority to designate officers or employees to administer oaths pursuant to § 2903(b)(2) has been delegated to the Assistant Attorney General, Justice Management Division. *See* 28 C.F.R. § 0.151.

We believe that the "principal officers of the executive departments" for the purposes of the Twenty-Fifth Amendment are the heads of the departments listed in 5 U.S.C. § 101, presently the Secretary of State, Secretary of the Treasury, Secretary of Defense, Attorney General, Secretary of the Interior, Secretary of Agriculture, Secretary of Commerce, Secretary of Labor, Secretary of Health and Human Services, Secretary of Housing and Urban Development, Secretary of Transportation, Secretary of Energy, and Secretary of Education. This view is supported by the legislative history of the Amendment. *See* H.R. Rep. No. 203, 89th Cong., 1st Sess. 3 (1965); 111 Cong. Rec. 7938 (1965) (Rep. Waggoner); *id.* at 7941 (Rep. Poff); *id.* at 7944–45 (Rep. Webster); *id.* at 7952, 7954 (Rep. Gilbert); *id.* at 3282–83 (Sen. Hart and Sen. Bayh).

At present, this list is identical to the list of statutory Presidential successors under 3 U.S.C. § 19, except that it does not include the Speaker of the House of Representatives or the President *pro tempore* of the Senate. Furthermore, although the acting heads of departments and recess appointees are not Presidential successors, *see* 3 U.S.C. § 19(e), the legislative history of the Twenty-Fifth Amendment suggests that, in the event of a vacancy in office or the absence or disability of a department head, the acting department head, at least at the level of undersecretary, principal deputy, or recess appointee might be entitled to participate in determinations of Presidential disability. *See* H.R. Rep. No. 203 at 3; 111 Cong. Rec. 15380 (1965) (Sen. Kennedy — acting heads); *id.* at 3284 (Sen. Hart and Sen. Bayh — interim appointees). *But see id.* at 3284 (Sen. Bayh — acting heads not entitled to participate). As a practical matter, and in order to avoid any doubt regarding the sufficiency of any given declaration, it would be desirable to obtain the assent of a sufficient number of officials to satisfy any definition of the term "principal officers of the executive departments."

A second issue that is not clear from the language of § 4 is the form that the "written declaration" should take. We believe that there is no requirement that the requisite written declaration of disability called for by § 4 be personally signed by the Vice President and a majority of the principal officers of the executive departments. The only requirements are that their assent to the declaration be established in a reliable fashion and that they direct their names to be added to the document. Moreover, the Vice President and the Cabinet heads may send separate declarations if necessary. *See Hearings on Presidential Inability and Vice Presidential Vacancy Before the House Comm. on the Judiciary*, 89th Cong., 1st Sess. 79–80 (1965) (1965 House Hearings).

Third, we believe that under both §§ 3 and 4 of the Amendment, the transfer of authority to the Vice President takes effect "immediately" when the declaration is transmitted or sent, and is not delayed until receipt of the document by the President *pro tempore* of the Senate and the Speaker of the House. Although the question is not free from doubt, the language and the history of the Amendment tend to support this conclusion. *See* S. Rep. No. 66, 89th Cong., 1st Sess. 12 (1965); H.R. Rep. No. 203, 89th Cong., 1st Sess. 3 (1965). *But see* H.R. Rep. No. 564, 89th Cong., 1st Sess. 3 (1965) (statement of Managers on the Part of the House to the effect that "after *receipt* of the President's written

declaration of his inability . . . such powers and duties would then be discharged by the Vice President as Acting President") (emphasis added). The better construction would allow the devolution of powers "immediately" (the word used in § 4 of the Amendment) upon transmittal. No meaningful purpose would be served by awaiting the arrival of the document. The alternative construction allows a more rapid transition of Presidential power when the national interest requires it.

Finally, neither § 3 nor § 4 states expressly whether the Vice President can or must take the Presidential oath of office when he becomes Acting President. If the Vice President is serving as Acting President pursuant to the disability provisions of the Twenty-Fifth Amendment because of a temporary inability on the part of the President, however, the legislative history of the Twenty-Fifth Amendment suggests that the Vice President would not have to take the Presidential oath. *See* 1965 House Hearings at 87; *Hearings on Presidential Inability and Vacancies in the Office of Vice President Before the Subcomm. on Constitutional Amendments of the Senate Comm. on the Judiciary*, 88th Cong., 2d Sess, 215, 232 (1964). Congress reasoned that in those circumstances the Vice President would only be acting temporarily as President, and that his original oath as Vice President would be sufficient to give legitimacy to actions taken on behalf of the disabled President.

The Twenty-Fifth Amendment does not require a Vice President to relinquish the office of Vice President when he becomes Acting President because of a temporary Presidential disability; in fact, the Amendment and its legislative history clearly contemplate that the Vice President will continue to serve as Vice President during and subsequent to the Presidential disability. *See* 1965 House Hearings at 87; S. Rep. No. 1382, 88th Cong., 2d Sess. 11–12 (1964). The Vice President would, however, lose his title as President of the Senate. *See* 111 Cong. Rec. 3270 (remarks of Sen. Saltonstall); J. Ferrick, *The Twenty-Fifth Amendment* 199 (1965).

This outline of the operation of §§ 1, 3, and 4 of the Twenty-Fifth Amendment is intended only as an overview of the mechanisms provided by those sections for succession to the responsibilities of the President by a Vice President.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*
